IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARYL J. CURRY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-18-2439 |
| MAHBOOB ASHRAF, et al., | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant North Branch Correctional Institution's ("NBCI"), Motion to Dismiss (ECF No. 11), Defendants Mahboob Ashraf, M.D. ("Dr. Ashraf"), Dawn Hawk, R.N. ("Nurse Hawk"), and Tara Cottrell, R.N. ("Nurse Cottrell")'s (collectively the "Medical Defendants"), Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), and Motion to Strike Surreply ("Motion to Strike") (ECF No. 21). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant NBCI's Motion. The Court will also grant Medical Defendants' Motion and deny their Motion to Strike.

## I. BACKGROUND[1]

On August 15, 2017, Plaintiff Daryl J. Curry, an inmate at NBCI, injured his thumb in a fight with another inmate. (Compl. at 1–2, ECF No. 1).[2] Curry was seen by Nurse Dawn Hawk, who told him that would see a medical provider that day. (Id. at 1–22). Nurse Hawk notified a medical provider that day, ordered an x-ray of Curry's right thumb, placed a request for a follow-up appointment with a provider, ordered ice and Motrin 200 mg every eight hours for pain, as well as an ace wrap. (Med. Defs.' Mot. Dismiss Summ. J. ["Defs.' Mot."] Ex. 1 at 2–3 ["Medical Records"], ECF No. 16-4). Curry was not seen by a provider that day. (Compl. at 3). During the next shift, "a little after 3:00 p.m.," Curry told Nurse Breauna Baker ("Nurse Baker")[3] that he was supposed to see a medical provider. (Id.). Baker told him she did not know anything about it, but she had been instructed to wrap Curry's thumb with an ace bandage. (Id.). Baker also gave him twelve tablets of ibuprofen 200 mg. (Id.).

Two days after the injury, on August 17, 2017, at about 9:00 a.m., Curry was taken to the infirmary for an x-ray. (Id.). He was informed the x-rays showed his right thumb was fractured and he would be treated by a prison medical provider. (Id.).

---

[1] Unless otherwise noted, the facts outlined here are set forth in Curry's Complaint, (ECF No. 1). To the extent the Court discusses facts that Curry does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Curry. The Court will address additional facts when discussing applicable law.
[2] Citations to the Complaint refer to the pagination the Court's Case Management/Electronic Case Files ("CM/ECF") system assigned.
[3] Nurse Baker is not named as a Defendant in this case.

The following day, August 18, 2017, Curry informed Nurse Cottrell about his x-ray results and expressed a need to be seen by a medical provider. (Id. at 4). Nurse Cottrell said she would look into it. (Id.). In a medical note dated August 18, 2017, Nurse Cottrell noted that Curry's x-ray results were not in the Electronic Patient Health Record ("EPHR") at that time. (Pl.'s Opp'n Ex. 1 at 4, ECF No. 18-1).[4] Cottrell wrote: "Plan of care is to keep hand wrapped, elevated, and apply ice. Patient should take Motrin for pain until seen by a provider." (Id.). The x-ray report is needed to refer an inmate to a provider for additional treatment decisions. (Getachew Aff. ¶ 6, ECF No. 16-5).

On August 19, 2017, Nurse Cottrell informed Curry there was no record of his x-ray. (Compl. at 4). Curry gave Nurse Cottrell the name of the officer who had escorted him to the x-ray department so that his need to see a medical provider could be verified through the officer. (Id. at 4–5).

On August 20, 2017, Nurse Cottrell told Curry the only reason that he had not been treated yet was that it was a weekend.[5] (Id. at 5). Nurse Cottrell assured him that he would be seen and treated the first thing on Monday. (Id.).

On August 21, 2017, Curry informed Nurse Cottrell that he was still waiting to be seen and treated. (Id.). She promised to look into it. (Id.). On the two following days, Curry again reminded Cottrell that he was still waiting for treatment of his broken thumb. (Id. at 5–6).

---

[4] Citations to Exhibit 1 to Curry's Opposition refer to the pagination CM/ECF assigned.

[5] August 20, 2017 fell on a Sunday. The date of Curry's initial injury, August 15, 2017, was a Tuesday.

3

Curry's x-ray results became available on the EPHR on August 23, 2017, and Nurse Cottrell referred him to a medical provider the same day. (Getachew Aff. ¶ 7; Pl.'s Opp'n Ex. 1 at 5; see also id. at 3). The August 23, 2017 medical record, created by Nurse Cottrell, states that when she checked the day before, Curry's x-ray results were not in the record at that time. (Pl.'s Opp'n Ex. 1 at 5). In his Surreply,[6] Curry disputes the date this information became available. (Pl.'s Surreply at 3, ECF No. 20). He argues "if you look at my x-ray it says it was placed on the computer on August 21, 2017. (Id.; ECF No. 18-1 at 4). Curry is correct in his assertion that the x-ray report is dated August 21, 2017. It is unclear whether August 21, 2017, is the date the results were entered in the EPHR as alleged.

On August 23, 2017, at approximately 1:15 p.m., Dr. Ashraf set the cast on Curry's right thumb. (Compl. at 6). When Curry asked why he had to wait so long for treatment, Dr. Ashraf responded that he did not have anyone to assist him in placing the cast. (Id.). Curry notes that he had to use his left hand to help Dr. Ashraf set the cast. (Id.). Dr. Ashraf prescribed 600 mg of ibuprofen twice daily for Curry's reported pain and instructed him to avoid the gym, recreation, and showers until Dr. Carls, an orthopedist, examined him. (Pl.'s Opp'n Ex. 5 at 6, 8–9). Dr. Ashraf placed a request for an orthopedic consultation for Curry. (Id. at 9).

---

[6] Surreply memoranda are not permitted unless otherwise ordered by the Court, see Local Rule 105.2(a) (2018), and are generally disfavored in this District. See Chubb & Son v. C & C Complete Servs., LLC, 919 F.Supp.2d 666, 679 (D.Md. 2013). However, they may be permitted "when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply." TECH USA, Inc. v. Evans, 592 F. Supp. 2d 852, 861 (D.Md. 2009). Although this exception is not applicable here, the Court is mindful that Curry is a pro se litigant will deny Medical Defendants' Motion to Strike.

On September 25, 2017, Dr. Ashraf saw Curry at the chronic care clinic. (Medical Records at 11). Curry presented no complaints about his right thumb. (See id.). Dr. Ashraf renewed Curry's ibuprofen prescription until December 25, 2017. (Id. at 13).

On September 7, 2017, Curry filed an Administrative Remedy Procedure ("ARP") Request, NBCI 2013-17, to complain that after he reported he injured his thumb on August 15, 2017 and had x-rays taken on August 17, 2017 that showed the thumb was fractured, he waited until August 23, 2017 to meet with a medical provider. (Pl.'s Opp'n at 14–15). On November 14, 2017, the Acting Warden dismissed the ARP as without merit since he was receiving medical treatment for the injury. (Id. at 14).

On November 30, 2017, Dr. Carls examined Curry's thumb. (Medical Records at 14). Dr. Carls found the fracture was well aligned and treated with a cast. (Id.). The interphalangeal (IP) joint of the right thumb was stiff, flexed down only twenty degrees, and had mild tenderness. (Id.). Dr. Carls' assessment was that the fracture healed with good alignment but there was stiffness in the IP joint, which he explained to Curry as very common. (Id.). Dr. Carls suggested physical therapy could help, and then if he did not improve, a hand surgeon should be consulted. (Id.). Dr. Carls advised Curry that while it is very difficult to reach full range of motion, it "definitely could be improved." (Id.).

On January 11, 2018, Curry filed another ARP, NBCI 0099-18, alleging that he had not been provided follow-up treatment since he broke his thumb on August 15, 2017. (Id. at 16–17).

At the heart of Curry's Complaint is his belief that too much time passed between August 17, 2017, when x-rays showed his right thumb was fractured and August 23, 2017,

5

when a cast was placed on his thumb. Curry asserts that in the interim, his thumb was so painful that he was unable to sleep because his hand got stuck in his sheets "and it felt like my thumb was being ripped from my hand." (Compl. at 6–7). Curry states that twice daily he is handcuffed from behind and he walks to the medical unit for insulin to manage his diabetes. (Id. at 7). When handcuffed, Curry's thumb rubbed against his buttocks, causing him to suffer extreme pain. (Id.). He also claims he could not eat unless officers handed him his tray through the slot in his cell door because he was unable to grab the tray. (Id.). Curry asserts that as soon as the cast was set 99% of his pain was alleviated. (Id.). In Curry's view, if there were insufficient medical staff available to treat his fractured finger, then he should have been sent to a hospital. (Id. at 6).

On August 9, 2018, Curry, proceeding pro se, sued Defendants. (ECF No. 1). The Complaint alleges that Defendants acted with deliberate indifference to Curry's serious medical needs after he fractured his right thumb in violation to the Eighth Amendment to the U.S. Constitution. (Compl. at 7). Curry seeks $10,000 in nominal, compensatory, and punitive damages. (Id. at 8).

On September 13, 2018, NBCI filed its Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (ECF No. 11). To date, the Court has no record that Curry filed an Opposition.

On October 4, 2018, Medical Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 16). Curry filed an Opposition to Medical Defendants' Motion on October 18, 2018. (ECF No. 18). On November 1, 2018, Medical Defendants filed a Reply, (ECF No. 19), to which Curry filed a Surreply on

February 25, 2019, (ECF No. 20). On March 7, 2019, Medical Defendants filed a Motion to Strike Surreply. (ECF No. 21).

## II.     DISCUSSION

### A.     NBCI's Motion

#### 1.     Rule 12(b)(6) Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB−12–969, 2012 WL 6087491, at *3 (D.Md. Dec.4, 2012) (citation and internal quotation marks omitted). "While pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

## 2. Analysis

NBCI argues the claims against it must be dismissed because it is immune from suit under the Eleventh Amendment and because it is not amenable to suit under 42 U.S.C. § 1983. The Court agrees that NBCI is entitled to Eleventh Amendment immunity.

Under the Eleventh Amendment to the United States Constitution, a state, or one of its agencies or departments, is immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. See Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Ann. Code, State Gov't § 12–201(a); it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, NBCI is not subject to suit in the federal district court. Accordingly, the Court will grant NBCI's Motion.

## B. Medical Defendants' Motion

### 1. Conversion of Medical Defendants' Motion

Medical Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). Under Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6) ] motion must be treated as one for summary judgment under Rule 56." The United States Court of Appeals for the Fourth Circuit has articulated two requirements

for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and second, "that the parties first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Here, Curry was on notice that the Court might resolve Medical Defendants' Motion under Rule 56 because they styled their Motion in the alternative for summary judgment

and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Curry also included extra-pleading material for the Court's consideration. (See ECF No. 18-1). In addition, Curry does not submit a Rule 56(d) affidavit, nor does he otherwise request additional time for discovery. Accordingly, the Court will construe Medical Defendants' Motion as one for summary judgment.

### 2. Rule 56 Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

11

The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3. Analysis

Medical Defendants contend that there is no genuine dispute of material fact that they were not deliberately indifferent to Curry's serious medical need, and therefore, are entitled to judgment as a matter of law.[7] Curry counters that Medical Defendants' Motion

---

[7] Medical Defendants also argue that Curry does not allege facts sufficient to support a claim for punitive damages. Because the Court conclude that there is no genuine dispute

only supports his assertions that they were aware of his broken thumb, and, as a result, the Court should deny Medical Defendants' Motion. Although Curry is correct that the evidence in the record establishes that Medical Defendants were aware of his injury, the Court will nevertheless grant Medical Defendants' Motion because the evidence also establishes that they acted reasonably under the circumstances.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) ); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson, 877 F.3d at 543. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695–96 (4th Cir. 1999). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Id. at 166. The treatment rendered must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." Goodman v. Runion, 676

---

of material fact and will enter judgment in Medical Defendants favor, the Court declines to address this argument.

F.App'x 156, 160 (4th Cir. 2017) (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds by Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

To establish an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate that: (1) objectively, he was suffering from a serious medical need; and (2) subjectively, the defendants were aware of his need for medical attention but failed to either provide it or ensure that it was available. Farmer, 511 U.S. at 834–37; see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). The medical condition at issue must be serious. Farmer, 511 U.S. at 837. A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); see also Scinto v. Stansberry, 841 F.3d 219, 228 (4th Cir. 2016) (concluding that the failure to provide a diabetic inmate with insulin where physician acknowledged it was required is evidence of an objectively serious medical need).

In order to satisfy the subjective component of deliberate indifference, a plaintiff must show that defendants acted with "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)

14

(quoting Farmer, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2001) (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)) (noting that the focus must be on precautions actually taken in light of suicide risk, not those that could have been taken); see also Jackson v. Lightsey, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) (quoting Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977)).

A delay in medical treatment may amount to deliberate indifference, Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104–05), if the plaintiff demonstrates the delay in medical care caused him to suffer substantial harm, see Webb v. Hamidullah, 281 F.App'x 159, 166 (4th Cir. 2008). Substantial harm can be shown by "lifelong handicap; permanent loss, or considerable pain." Shabazz v. Prison Health Servs.

Inc., 2011 WL 3489661, at * 6 (E.D. Va. 2011) (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)); see also Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995).

Here, Curry states he submitted his "first of several sick call slips" on August 17, 2017, but "nobody did anything." (Compl. at 4). Curry reiterates this point in his Opposition, stating that he "turned in at over fifty sick-call slips" to be treated but "medical did not do anything." (Pl.'s Opp'n at 4). Medical Defendants dispute this assertion, and have filed all of Curry's sick call slips, a total of 30, that he submitted from August 3, 2017 to August 3, 2018. (Medical Records at 15–54). None of the slips specifically reference the right thumb fracture. (See id.). Curry does not provide a declaration or evidence to the contrary.

Curry does not dispute the Medical Defendants' characterization of his injury as nonemergent, thus dispelling his argument that he should have been treated in a hospital. It is unclear why the posting of the x-ray report took three days, and the cause for the delay is not known. Neither Medical Defendants nor Curry address whether Cottrell could have made further inquiries given the delay in posting the x-rays. Such questions may support a claim for negligence, a cause of action that arises in state law,[8] but they do not suggest actions so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Goodman, 676 F.App'x at 160 (quoting Miltier, 896 F.2d at 851).

---

[8] To the extent Curry's claims may state a cause of action for medical negligence, such claims must be presented in the appropriate state court.

Further, the Medical Defendants have provided declaratory evidence that the extra three days it took for the radiology report to be posted had no adverse clinical effect on Curry's right thumb alignment. (Medical Records at 14). Dr. Carls' assessment was that Curry's fracture healed with good alignment but there was stiffness in the IP joint, which is very common, and that physical therapy could improve the range of motion. Importantly, Curry provides no declaration to dispute these facts.

Thus, when the evidence is viewed in the light most favorable to Curry, the Court concludes that there is no genuine dispute of material fact that the delay in Curry receiving medical treatment for his broken thumb did not amount to deliberate indifference. Shabazz, 2011 WL 3489661, at * 6 (quoting Garrett, 254 F.3d at 950). Accordingly, the Court will grant Medical Defendants' Motion.

### III.  CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will grant NBCI's Motion to Dismiss (ECF No. 11). The Court will also grant Medical Defendants' Motion to Dismiss or Motion for Summary Judgment (ECF No. 16) and deny their Motion to Strike Plaintiff's Surreply (ECF No. 21). A separate Order follows.

August 23, 2019  
Date

/s/  
George L. Russell, III  
United States District Judge